24-2251, Civil Rights Corps v. LaSalle Mr. Yanni, is that right? Yanni? Yanni. May it please the Court, Steven Yanni for the appellant. The District Court's decision declaring a right of public access to attorney-disciplined proceedings and records will profoundly undermine New York's ability to regulate the bar and should be reversed. I'd like to start with the merits by explaining why history and logic don't support a right of access here before turning to the abstention and ripeness issues. So first on the merits, with respect to committee dispositions, I want to make three key points on the history prong of the analysis. So first, the confidentiality of committee dispositions, which include dismissals of meritless complaints and letters imposing private warnings or admonitions, is consistent with the committee's unique investigatory and prosecutorial role. By regulation, the committee's purpose is to investigate and prosecute attorney-disciplinary matters. And much like a grand jury, the committee, after investigation, can decide whether to authorize formal disciplinary proceedings or decline to pursue the matter further. And our nation has... But the committee is not just limited to making a recommendation to a decision-making body. It can also result in a disposition, right? Yes, that's true. But this still reflects an exercise of prosecutorial discretion, whether to initiate a formal disciplinary proceeding or take some action short of that step. And prosecutors also have options besides initiating a formal prosecution, such as non-prosecution... Well, prosecutors never say, like, I am resolving, you know, the issue of the allegation that you committed a crime. They decide whether to prosecute before a court or not to. But here, the committee can actually resolve the claim that the attorney has engaged in misconduct, right? So I think one analogy are some of the alternatives to prosecution, like a non-prosecution agreement or a deferred prosecution agreement, for example, and there's no history of those documents necessarily being public. So I think that's an analog that can be drawn. And even if the analogy is not perfect to the grand jury, it's definitely clear that the committee's role is more investigatory and prosecutorial. And it's also undisputed... But that's why, I mean, the claim here is not that there should be a right of public access to all of their documents and everything they did in the investigation. The claim is there's a presumptive right of public access to the ultimate resolution, right? And so to the extent that it's investigatory, there isn't actually a claim that there should be a right of public access to that. It's only when they're resolving the claim, right? That's the extent to which the committee is not like a prosecutor doing an investigation. Well, I disagree, Your Honor. The disposition really is the culmination of the investigatory process, and there's also no history of making these kinds of materials, the decisions of the investigatory bodies, public. To the contrary, plaintiffs can see... Well, there's no history of that to the extent that we're using a committee, right? But like at the founding, we did this through equity suits and whatever. And the fact that now we're doing it through a committee that is not itself a court, like that shouldn't get you out of the constitutional requirement if they're doing the same thing that would have been public at the founding, right? Well, they're not doing the same thing, Your Honor. I think it's kind of... Historically, the way it would work is proceedings before a court, and even if the court decided there wasn't any misconduct, those proceedings and that disposition would be open to the public. If in fact that decision is now given to a committee that's staff members within the court, they're doing the same thing that would have been done by a court earlier in our history, right? I disagree. Those proceedings that plaintiffs rely on look much more like the formal disciplinary proceedings in the Second Department and do not look like the ex parte investigations. So is there history... You make the analogy to... Both sides are fighting about the analogy, but don't make the analogy just when you look at historically disciplinary proceedings, was there some stage in the process pre-formal adjudication that was maintained confidentially or privately? Well, I think the issue is there's no evidence that there was such a process at all because there was really... There were no frivolous allegations of attorney misconduct at the founding? Well, what would happen is it would take the form of a lawsuit, basically. There wouldn't be a preliminary investigation. I mean, we do have some historical evidence of the English... Right, so if that's the way we resolved it in the form of a lawsuit and you don't dispute that the proceedings in a lawsuit are all subject to a presumptive right of public access, the fact that now the State is saying we're going to take it out of court proceedings and make it a secret proceeding before an administrative committee, that would be a violation of that historical right, right? I disagree. I still go back to the fact that this... I mean, maybe you dispute the analogies or whatever, but just for the purposes of this question, just accept the premise. Let's say all of these things would have been done through a lawsuit where all of the proceedings would have been public, and we think that that is covered by a presumptive right of public access under the First Amendment. If a State leader decides we want part of those proceedings to be secret and we're going to give it to a committee that doesn't release any of its proceedings, that would be a violation of the First Amendment. I disagree that it's making part of the proceedings secret. There is a new process now whereby there are codes of conduct that didn't exist prior to the early 1900s and widespread regulation of attorneys. Oh, I see. That's right. So your argument is it's different in kind. It's completely different in kind. To be proceeding before a court than when there is a private body that creates codes of conduct. Yes, that's completely different. What's interesting about that here is the committee that we're talking about is not a committee of the New York State Bar Association. It's part of the actual court, and maybe they're drawing on codes of conduct that are developed by the Bar Association, but that is still a governmental body, right? It's still a governmental body, but the history and logic test has us look at the process itself and just the fact that it's a governmental body doesn't mean there's a presumptive right of action. I also want to note that there's no dispute here that the chief attorney's dispositions are not subject to a public right of access, and plaintiffs haven't challenged that finding. And, you know, the chief attorney has the option to— Why doesn't that undermine the argument you're making? Because you're sort of saying to the extent that something is investigatory and like a prosecutor it should not be released, but to the extent it's like a disposition by a court, maybe it would be released. And that's exactly what they're saying. They're saying all of these investigations, until you get to a resolution of the claim, they can be confidential, but the resolution of the claims is what is subject to a presumptive right of public access. But what I'm saying is that the chief attorney is allowed to dismiss a complaint because it doesn't state a violation of the rules. It can decline to pursue investigation, refer something to an alternate forum— But you just told me that's what prosecutors do, so why isn't the answer that the chief attorney is acting like a prosecutor because he's deciding whether to pursue a claim, but the committee actually gets to resolve the claim, and that looks more like a court. Well, the committee is not resolving the claim, to be clear. It's either—it's either—it's doing the same thing as the chief attorney. It's deciding what— Well, that's not true, because the committee can decide, you know, there was a violation of the rules, but there wasn't bad faith, and so we just think like informing them of the rules or kind of chastising them or instructing the attorney about—that's the way we're going to resolve it, right? So it's only a certain class of claims that it where it thinks that the public rebuke is justified. Right. It's referring claims where there's probable cause to believe there's a violation of the rules and that public discipline would be appropriate, and I'd like to note that— Right, public discipline. Right, so that means that the committee is empowered to impose private discipline, right? Yes, that's correct, but— So does a prosecutor impose discipline on, you know, suspects? Well, first, I'd like to note that only one of the dispositions that can be reached by the committee are—is discipline. The letter of warning is not considered discipline under the rules. Dismissing the complaint is not discipline, but under the district court's ruling, all of that becomes public. The only other— Well, under the district court's ruling, all of that becomes presumptively public, but if the committee were to make a finding that, you know, given the nature of the allegations or the way we think it's appropriately resolved, we have reasons that we can sit on the record for some—the whole thing or some aspect of it should remain confidential, that would not be inconsistent with the district court's ruling, right? Well, that would assume that a—that public access—that presumption of public access applies, and we're disputing that underlying premise, and I think— Well, I know that, right. Right, so—but I think it's also important to note that the vast majority of states, as is undisputed, do not open attorney disciplinary proceedings until at the earliest, where there's a finding of probable cause and formal disciplinary proceedings are initiated. Oh, no, so that actually leads to my question about what is your argument for why, even at the disciplinary hearing stage, that that should still be confidential, because that is more in line with the prior history of court proceedings to determine disbarment, and that is the place where New York is in the minority in terms of keeping this confidential. What's the justification for keeping that part of the proceedings secret? So, with respect to the history, I think the district court recognized that, even with respect to the proceedings that were public, the history is sparse. I mean, as I noted, attorneys were rarely disciplined from the time of the Revolution to the 20th century, and there were no codes of conduct. I think that's really my—that's really our key point, is that the kind of work that the—that these formal disciplinary proceedings are accomplishing are different. We're not assessing civil or criminal liability under state statutes, like these attorney versus attorney proceedings. Instead, where the courts are— But the code of conduct issues very often do still involve claims that might be subject to suit. It might be a former client saying this person did something wrong, in my case. I mean, that's—the fact that it's an ethical—potentially an ethical violation doesn't, to my mind, make it distinct from the kinds of things in the past that people would sue their attorneys for. Well, I disagree, Your Honor. I think those same kinds of suits by clients against attorneys are still available under New York Judiciary Law 487, and those proceed as normal civil litigation in public. But the disciplinary proceedings proceeded on a separate track. And when you look to when the modern disciplinary proceedings first came to be, in the early 20th century, practices were mixed as to whether the proceedings were public. And then once the—once regulation of the bar really proliferated by the mid-20th century, almost all formal disciplinary proceedings were closed to the public. In fact, in the 1980s, only nine states had open disciplinary proceedings at that stage. So there's not this—when you look at the relevant analogs, there's not a clear historical tradition of keeping these kind of proceedings open. Is there some argument that because, actually, the First Amendment was not incorporated against the states until the early 20th century that maybe the relevant time to think about the limitations it imposes on the states is the 20th century as opposed to the founding? You know, obviously, there's a lot of debate about that question. I think if you do look at the time of, you know, 1868, for example, that is shortly before the, you know, bar associations started getting involved in disciplinary proceedings. And as of 1877, when the Bar Association of the City of New York was founded and started assessing these kind of complaints, it was keeping these matters confidential. So I think that, you know, suggests that states wouldn't understand there to be First Amendment problems, nor do we have a history of— That's not what states would understand. I guess your argument would be that the framers and ratifiers of the 14th Amendment had a different understanding of what the First Amendment required when they applied it to the states. That would be the idea, right? I understand that that's, you know, one of the arguments in support of relying on that area of history. I think, you know, we think all the history is relevant, and no matter where you look, the courts rule in our favor. But I'd also note that we don't have a history of constitutional challenges to these state practices. In fact, the only decision I'm aware of is the McLaughlin case from the Pennsylvania Supreme Court in the 1970s, which found there was no First Amendment problem with keeping—maintaining the confidentiality of disciplinary proceedings. Okay. Thank you very much, Mr. Yanni. We'll hear from you again on rebuttal, but let's turn to the appellee, Mr. Discant. Thank you, Your Honor. And may it please the Court, I'm Greg Discant on behalf of the appellees. From our perspective, New York's disciplinary process does not function to protect the public, and this lawsuit on behalf of my clients is a step in addressing that issue. Let me talk first about history. There's no—the record is clear that until 1945, when Section 9010 was enacted in New York State, discipline of lawyers by the state in New York State was done in public trials. There's ample literature on it. There are cases on it. I recommend to you Professor Levin's article on it, and the district court's findings support it. There's no dispute to that. So now we turn to what the state has done since 1945. First, it makes secret trials in the appellate division that are just like the trials that occurred before 1945. I haven't heard anything suggesting there's a good reason to keep them secret. So I'll just rest on our brief on that and move to the grievance committee dispositions. As Judge Menasche suggested in his questioning, 87% of the dispositions by the grievance committee are dismissals by the chief counsel. They're not part of this case. We're talking about the 13.5% that result in dispositions by the grievance committee sitting as a representative of the appellate division under the authority of the appellate division and adjudicating discipline. That's an adjudicative function. And when you think about the history, I think there are two ways to think about it historically. First, you can think about the grievance committee's work as simply a recurrent iteration of the judicial process of disciplining lawyers going back to the founding. This is how it's being done now, and it's just a continuation. So your view is that the chief counsel, is that what he's called? The chief attorney is actually like the prosecutor and the committee is like an administrative tribunal that's adjudicating the case. That's exactly right. But Mr. Yanni says, well, the committee itself is also like a prosecutor because it decides to make a referral to the appellate division. Why shouldn't we decide that that's the proper analogy? Well, because if it refers it to the appellate division, we're seeking access to the trial before the appellate division. But the rest of what it does are adjudicates disputes. So they admonish a lawyer for a violation of code. It may caution the lawyer for conduct that is worrisome. Is a caution an adjudication and is a dismissal an adjudication? It seems as if what the committee is doing in some ways does have elements of both, yes, an adjudicatory body and also a prosecutor. And so in the range of dispositions that the grievance committee can impose or find, are they all really equivalent to what's happening or roughly equivalent to what's happening once it goes to the appellate division? I think they are adjudications. A dismissal? Yes, a dismissal is the same as trying a case and losing because that's what happens. How is a caution? All the measures of discipline issued by the grievance committee are the committee sitting in judgment on a fully developed record in which the state through the council has presented evidence, has done an investigation, has marshaled the facts. The responding attorney has done the same and defended his or her behavior. Sometimes they bring in the attorney for in-face questioning or presentations and then they reach a judgment under the law and the law sets forth the various questions that can be decided by the committee. And one of the issues that can be decided, it's an adjudication by the committee, that the conduct is not a violation of the code but nonetheless warrants comment. And that's the adjudication of the committee sitting as the representative of the appellate division before a tribunal of volunteers appointed by the chief judge. So in our view, everything that the committee does sitting as a committee is an adjudicative proceeding and constitutes something that should be presumptively open. The dispositions again, we're not going into the investigations and the like. But there's a second way to think about the history besides as the current iteration of the historic judicial process of open trials. The second way, as this court has done in the Civil Liberties Union against transit authority case, and also in a case we neglected to cite in our brief, but the media amicus did cite, the United States against Suarez, which is 880 F 2nd 626. Both of those cases find a presumptive right of access even without history. And the transit authority case basically says that it doesn't matter whether there's a history of openness going back to the founding. What we're looking for is what work is the adjudicative body doing? How does it fit into the legal framework? And is there a First Amendment interest at play? But the assumption of that is that that is what has historically been open to the public, right? Like I understand that it doesn't. No, no, no. The presumption of that is it hasn't been historically open to the public. So in both cases, they're dealing with new procedures. In the transit authority case, the transit authority didn't have. But wouldn't our job be if there's new procedures to look at the most appropriate historical analog? If there were, in fact, disciplinary committees just like this at the founding that had secret proceedings and never released anything to the public, you wouldn't be able to say that the First Amendment required a presumptive right of public access, would you? What the first, what this Court has said in two cases is you look at the nature, the work the proceeding does. And so, yes, in that sense, you're looking back historically. But the work, the work that the adjudicative body does is adjudicating a case. That's what the transit authority case does. Can I ask, Mr. Diskant, I understand this is an as-applied challenge and in particular involves complaints vis-a-vis prosecutors. But wouldn't the implication, what would be the implications of the holding, for example, beyond complaints against prosecutors, what would be the implications for Second Circuit's grievance process, SDNY's grievance process? Would there be any basis to distinguish a conclusion that the, that the presumptive, there's a presumptive public access right? Excuse me. Judge Barrera made it very clear that it was an as-applied decision. And so he said for... He's a district judge and it doesn't have any, any binding implication therefore for anything. But if we were to affirm on the same grounds, what would be the implications, for example, for our own grievance process? What Judge Barrera said was the decision might well be different if, for example, the complainant was treated as a complainant under New York law and got the results in any event. The result might be different if the respondents or the accused attorneys were not attorney, were not prosecutors. I could say the results might be different. Why would that be? I mean, would there be a different history, experience analysis that we'd be doing? Would there be a different logic? Compelling interest. Our analysis might be different. The last step of the analysis that Judge Barrera undertook, which the state did not bother to steal, was in the event, was whether the state had shown a narrowly tailored compelling reason to keep the results secret as to the prosecutors, and they failed to do that. The state hasn't challenged that. Yeah, but that's not... I mean, so like the question before us is whether there's a presumptive right of public access. So what you're saying is for non-prosecutors, it might be easier for the state to show good cause to keep something confidential, but there still should be a presumptive right of... Like, nothing about your argument depends on the respondents being prosecutors, does it? Well, certainly in a way... You're talking about the nature of attorney discipline proceedings historically. You're not saying there were special proceedings for prosecutors versus other types of attorneys. That's true. What we have said is that there's a terrible antecedent of public trials. We've said that more recently, new procedures that have analogs historically can be found to... Right, and nothing about that argument depends on the respondents being prosecutors. I'm agreeing with you. Right. So your position is it doesn't make a difference. Like, if the respondents were private attorneys, the same arguments would apply. We haven't taken on that burden. We certainly agree that as the Bar Association argues... I guess I put the question this way. Is there a ground of decision available to us that would be particular to prosecutors as opposed to just a general rule about attorney discipline proceedings? Well, I can propose one, although this is beyond what we've been arguing. But for example, the logic prong of the First Amendment analysis is whether public access plays a significant positive role in the functioning of the particular process in question. There's very little, there's almost no legal development on what particular process refers to. So one could say, and in fact we argued it this way, that the particular process is the discipline of prosecutors. And therefore, the logic component can dwell upon the logic of public process playing a significant positive role in the functioning... But historically, you haven't identified a process particular to prosecutors. And it doesn't seem like contemporaneously, there is a process for prosecutors that's different from other attorneys. So like, where do we get the idea that there's a particular... You were making a logic argument. I'm making just a logic argument, it's not a history argument. That's correct. That's just a logic argument. Because if you wanted to cabin your ruling, you could say this ruling applies to prosecutors and leave it there for the law. But you said that the hook was the particular process. You said here the particular process is about misconduct allegations against prosecutors. But in point of fact, there isn't a separate process for prosecutors today. There wasn't a separate process for prosecutors at the founding. So how can we say there's a particular process for prosecutors? You could say it because that's what this case is about. And we have framed it as about prosecutors. You can disagree with that. I mean, I understand where you're going. I understand that the law may well develop in a way that opens up more proceedings. So on that question, with respect to the Second Circuit's grievance process, I guess if we're just talking about grievances against prosecutors, there would be no basis to distinguish our grievance process from the state's for purposes of whether... For prosecutors. Yes. Whether the First Amendment right of access would... That is true. Again, our issue has to do with trials and with dispositions. So I'm frankly not completely familiar with what the Second Circuit does or doesn't do with respect to how it resolves grievance complaints. But I've certainly seen written... And same question for any district grievance process within the circuit. Same answer. I mean, there's not a lot written or publicly available about how these processes work. I've certainly seen recommendations from the district grievance committee to the court for discipline and written decisions by the court that are public, disciplining attorneys for violating the rules. I've seen the same in the Second Circuit. But I don't purport to be standing here telling you exactly how those work. I do say, I mean, certainly your question about where is this going is a good one because while our case is limited to what our case is, and I think is compelling and not really meaningfully met, we don't know where the law is going. And I think our clients would be very happy to see the law develop with greater access. With respect... This is sort of back to an experience question. We're told with respect to other states that New York is an outlier on the formal proceedings. But on the pre-formal proceedings, what's your understanding of what's happening? My understanding is I believe there are seven states that have no private discipline. There are... The vast majority of states have at least some public reprimands. The ABA recommends public reprimands. And New York, I don't know that it's an outlier. New York has its idiosyncratic rules that have been around since 1945. Actually, we're not quite sure when the grievance process began. It's been very hard to track it down. That is the Grievance Committee's ability to impose discipline. When you go back, in 1921, New York State... Sorry, I'll ask you to continue the point. But it just occurs to me as you say that, the dismissal of the complaint, for example, which isn't imposing discipline, falls within the category of what you're seeking. Yes. And so what's your understanding with respect to other states as to the public or private nature of dismissals of complaints? I don't think I can answer that question. But if you wish, I can submit a letter setting forth what we're able to figure out. But the information is not super accessible. There is an ABA website that lists all the states and gives various dates. I can refer the court to that if that would be helpful. And frankly, I've forgotten what I was saying. But I have a question. So let's say I agree that there isn't a tradition or practice at the founding of confidential proceedings before a committee. But as Mr. Yanni pointed out, we have almost 100 years of a practice where a committee is doing it confidentially. And nobody has suggested until now that that's a problem. What do I do with that history? Does that make a difference? The New York State was acting unconstitutionally since 1945 and maybe since 1921. I think not. I mean, basically, there's very little law in the subject going either way. And there are many instances. And think about Brown against Board. There are many instances of unconstitutional practices going on for decades. And here, I mean, what can possibly, to take the simplest part of our case, what can possibly be the legal justification for having secret star chamber trials before the appellate division? 9010 was enacted, as Your Honor actually alluded to, before the Supreme Court developed the body of law of public access to trials. And so they were secret, but that doesn't make them constitutional. And your rule doesn't have an objection that if the appellate division decided there was some reason for keeping the proceedings confidential, it could make a finding and have individualized the confidential proceedings, right? I'm not sure I heard all that question. Sorry, your rule is just there's a presumptive right of public access. If the appellate division wanted to make a finding that there was good cause to keep a proceeding confidential or sealed, it would be allowed to do that if the finding was defensible. Absolutely. The hypothetical widow who's swindled out of her funds and is embarrassed and is hospitalized and whatever, maybe that's going to be good cause to keep that proceeding secret. Confidential information clearly would be kept secret. Okay, I get the examples. Okay. That's not before us because the decision here is just there's a presumptive right of public access. And more than that. And the way you overcome the presumption would be left to be decided in a future case. Except in this case, Judge Marrero said it wasn't overcome. He found... Yes, okay, I see. And so they didn't appeal that. They're not arguing there's a good reason to keep secret the results of the disciplinary proceedings against these 21 prosecutors, but they still won't give them to us. But the reasons... You go to page one of their brief. Why is this secret? Because it will harm the reputation of those based on unfounded complaints. It'll protect sensitive information and encourage witness cooperation. If those reasons were good enough to keep a proceeding secret, all criminal trials would be in secret. It doesn't take you anywhere. The reputation here... Okay, I think we have that argument. Those arguments from the briefing. Thank you very much, Mr. Discant. We'll hear back from Mr. Ianni on rebuttal. So first, I just want to clarify the role of the committee and what it does. It absolutely has investigatory and prosecutorial functions. Contrary to what my friend said, this is not a decision made on a full record. The respondent attorney doesn't have a right to attend the interviews of witnesses by the committee. There's no trial-like proceeding at all. The respondent does have a chance to contest when an admonition is imposed, but that's not a trial-like process either. It's just a short hearing before the court. So there's no... Contrary to... That is a hearing, right? I mean, the committee hears from the chief attorney and from the respondent, right? It makes a decision. Yes, but there's not... There's examination of witnesses and what amounts to a formal trial-type process. That just doesn't happen. But what it looks like is, you know, an administrative hearing. So, like, the way an administrative agency would conduct a hearing, like an adjudication to determine something, where there's notice and opportunity to be heard, even if it's on the papers or a limited hearing. That's what this is. Only with respect to an admonition. And the second point that I want to emphasize is that most of the dispositions, all but one, that the committee can render are not disciplined. They can dismiss a complaint, or they can refer to substance abuse programs, they can refer to another forum, or they could issue a warning. None of those are disciplined under the rules. And also, the committee itself is the petitioner in the appellate division formal disciplinary proceeding. The chief attorney who is counsel to the committee prosecutes that proceeding. So the committee does have these core investigatory and prosecutorial functions. And also, there is no way to just cabin the impact of the district court's ruling here. Judge Nathan asked about the rules of this court and the district courts in this circuit. They're indistinguishable from New York's rule on confidentiality. And there's no way to limit the district court's ruling just to prosecutors either. As this court has made clear in the Hartford Current Company v. Carroll case, we don't look to who the individual litigants are, we look to the nature of the process as a whole. So there would be broad, wide-sweeping effects of a ruling in plaintiff's favor. And you might say it's unprincipled, but it would be possible to say that there is a heightened First Amendment interest in a right of public access to proceedings about public officials. I think that what the Supreme Court has instructed and this court's precedent shows, you have to look at the process in general. And the fact of the matter is that prosecutors make up a very small fraction of attorneys in New York that all are subject to the same process. So while these are arguments that plaintiffs could make in a good cause application to the Second Department, they don't justify a right of access. And the severe intrusion in the disciplinary process, I think, supports our abstention arguments, if the court would indulge me for just a couple minutes on that. Sure. Well, not a couple minutes. How about just make the point straight? Sure. Our key point is that what the district court's ruling does here is it injects new substantive requirements into the decision-making process and takes off the table critical tools for the committee to handle... Yeah, but that, I mean, those cases about having a federal audit of state proceedings involve like an injunction where the federal courts were overseeing what goes on. Like we have prior cases where we have just said there is a right of public access and states have to do it. Are you saying we should have abstained in those cases? I think what makes this case unique is that the disposition's confidentiality is inexplicably intertwined with the consequences of the disposition and declaring a right of access collapses the distinction between all the different dispositions and effectively makes everything similar to a public censure. So I think that's what makes this case unique. But doesn't, I mean, wouldn't it still be available to the state or to the committee or to the appellate division to say the nature of this case, you know, is such that there's going to be a... that having an adequate resolution requires confidentiality. And if they can explain why, they can have that resolution, right? So the district court understood that under the rules, the committee can impose confidential dispositions where it finds that the existing statutory criteria are met. But apparently that's not enough. And the committee would have to justify that with something further and make specific factual findings about First Amendment values. And that additional process the district court imposed... Well, that's what a presumption is, right? We're just flipping the default. If the state or, you know, the First Amendment would be flipping the default. If the current rule is that everything's going to be confidential unless you have a good reason for it to be public, the idea would be everything should be public unless you have a good reason for keeping it confidential. But we have rules like that. That's the way judicial proceedings work right now, right? So I think the point I'm making is that this is... These detailed findings go to the ultimate resolution. They affect the consequences that the attorney will suffer. So you're saying the interference with the state is that if there's a presumptive right of public access, it reduces the menu of options the state has for resolving misconduct complaints? Yes, that's correct. I think I have that argument. Thank you very much, Mr. Yanni. The case is submitted.